273 N.J. Super. 335 (1994)
641 A.2d 1109
JAMES DOWNEY AND LYNN DOWNEY, PLAINTIFFS-APPELLANTS,
v.
CITY OF ELIZABETH AND RASMUSSEN ADMINISTRATORS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1994.
Decided May 24, 1994.
Before Judges PRESSLER, BROCHIN and KLEINER.
*336 Yale S. Hauptman argued the cause for appellants (Craner, Nelson, Satkin & Scheer, attorneys; Stephen A. Satkin, on the brief).
Gary A. Bundy argued the cause for respondents (La Corte, Bundy & Varady, attorneys; Mr. Bundy, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The issue raised by this appeal is whether a municipal self-insurer is required to afford underinsured motorist benefits (UIM) to drivers of vehicles owned by it. We agree with the trial judge that it is not, and we therefore affirm the summary judgment dismissing the complaint.
Plaintiff James Downey, a police officer employed by defendant City of Elizabeth, was seriously injured when the motorcycle he was riding while on duty was struck by a vehicle owned and operated by Maria Rodrigues. The Rodrigues vehicle was insured by a liability policy with a $100,000 limit. Plaintiff and his wife, Lynn Downey, who had sued per quod, settled their action against Rodrigues for $90,000. Since plaintiff's damages exceeded the liability limit of the Rodrigues policy and since there was no other policy to which he could have recourse, he asserted this claim against Elizabeth, seeking UIM coverage from it as a self-insurer. This action followed the City's rejection of that claim.
In granting defendant's motion for summary judgment, the trial judge reasoned that a self-insurer is required to afford only those coverages mandated by statute. Since UIM is not a compulsory coverage, he concluded that the City's self-insurance obligation did not encompass it. We concur.
Compulsory motor vehicle liability insurance is generally required by N.J.S.A. 39:6A-3, applicable to passenger automobiles, and N.J.S.A. 39:6B-1, applicable to all other vehicles. Both prescribe minimum coverage of $15,000 for one victim and $30,000 for more than one victim, and neither makes any reference to *337 either UIM or uninsured motorist coverage (UM). The municipal insurance obligation is not governed by Title 39 but rather by Title 40A. Thus, N.J.S.A. 40A:10-3, enacted subsequent to these Title 39 sections and presumptively superseding them, requires all local units to maintain insurance coverage for the operators of all its motor vehicles, equipment and apparatus in the minimum amount of $50,000 for one victim and $100,000 for more than one victim. N.J.S.A. 40A:10-3, like the Title 39 sections, is silent both as to UM and UIM.
The source of UM and UIM coverage is N.J.S.A. 17:28-1.1. Paragraph a. of that section requires every motor vehicle liability policy to provide UM coverage in the same minimum amounts as minimum liability coverage. The insured's counterpart obligation to maintain minimum UM, at least for automobiles, is prescribed by N.J.S.A. 39:6A-14. Paragraph b. of N.J.S.A. 17:28-1.1 requires the insurer to offer to the insured, as an option, additional UM coverage up to a maximum of $250,000/$500,000. It also requires the offering, as an option, of UIM coverage up to that maximum, subject to the stipulation that the UM and UIM coverage opted for not exceed the insured's liability limits.
It is now well-settled that ordinarily the statutory requirement of compulsory UM coverage applies to both private and public self-insurers of all types of motor vehicles. Christy v. City of Newark, 102 N.J. 598, 607, 510 A.2d 22 (1986); Transport of New Jersey v. Watler, 161 N.J. Super. 453, 463, 391 A.2d 1240 (App.Div. 1978), aff'd as modified, 79 N.J. 400, 400 A.2d 61 (1979). As we explained in Transport of New Jersey, which dealt with what was then a private entity, the primary purpose of compulsory UM coverage was "to prevent the drain on the [Unsatisfied Claim and Judgment] Fund caused by claims against uninsured motorists." 161 N.J. Super. at 459, 391 A.2d 1240. Compulsory UM coverage was accomplished by the 1972 amendment of N.J.S.A. 17:28-1.1, which "changed the requirement of an offer of UM coverage to a compulsory requirement of UM coverage in liability policies." Id. at 461, 391 A.2d 1240. Since a self-insurer must "be *338 expected to cover at least the same risks that other motorists are required by law to cover," id. at 463-464, 391 A.2d 1240, we concluded that self-insurance must be deemed to include UM coverage. The Supreme Court in Christy endorsed that reasoning and extended it to municipal self-insurers as well. And in Ross v. Transport of New Jersey, 114 N.J. 132, 142, 553 A.2d 12 (1989), the Court reaffirmed the principle that the "status of a self-insured is considered the equivalent of insurance, thus requiring the provision of UM coverage.[1]
None of the linchpins of the Transport of New Jersey and Christy rationale apply to UIM. UIM coverage does not implicate the public financial concerns represented by assault on the resources of the Unsatisfied Claim and Judgment Fund. More significantly, the Legislature has not yet seen fit to mandate UIM coverage. As we made clear in Transport of New Jersey by our reference to the 1972 amendment of N.J.S.A. 17:28-1.1, the Legislature is well aware of the distinction between a mandated offer of coverage and mandated coverage. We must therefore assume that when it made all UIM coverage and all UM coverage in excess of the statutory minimum subject only to a mandated offer, it quite purposefully chose not to make those coverages compulsory. We recognize that UIM coverage is grounded in considerations *339 of fundamental fairness and is reflective of the inadequacy of the compulsory limits to protect innocent victims of highway mayhem who sustain serious injury. There is surely an essential justice in affording motorists the opportunity to purchase for themselves the same amount of protection they purchase for others. But whether they must do so is a legislative decision. The Legislature has not yet so required.
Thus, the problem with plaintiff's claim, as we view it, is that we can perceive no acceptable rationale for extending a self-insurer's obligation to types of coverage beyond those mandated by statute. We think it plain that if Elizabeth had not opted for self-insurance but had purchased insurance, it could have done so by way of a policy affording $50,000/$100,000 liability limits, $15,000 UM coverage, and no UIM coverage. We do not see how, in that case, we could have imposed upon it the obligation to have also purchased UIM coverage. Concomitantly, we do not see how we can deem its self-insurance to include UIM coverage.
Plaintiff relies on the Supreme Court decision in Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., 119 N.J. 402, 575 A.2d 416 (1990), in which a private self-insurer's liability limits were held not to be the statutory minimum but rather an amount up to the first layer of its purchased excess coverage. We regard that decision as inapposite here since it dealt not with the types of statutorily mandated coverages, but rather, only with the amount of that coverage.
We make this final observation. Even if we were to assume that UIM coverage were mandated, we would be unable to afford plaintiff any real remedy. Recovery of UIM benefits is permitted by N.J.S.A. 17:28-1.1 only when the amount of the UIM coverage exceeds the tortfeasor's available liability insurance. If there were compulsory UIM coverage here, it would, however, be either in the amount of $15,000, the UM mandatory minimum prescribed by N.J.S.A. 17:28-1.1, or, at most, $50,000, the amount of the mandatory liability minimum of N.J.S.A. 40A:10-3. That is so because, in the absence of any proof that Elizabeth's self-insured *340 liability limits actually exceed the mandated minimum, the UIM would have to be fixed at that level as well by reason of N.J.S.A. 17:28-1.1, which limits the amount of the UIM coverage to the amount of the liability coverage. But since the tortfeasor's policy here had a $100,000 liability limit, even a $50,000 UIM coverage would be of no avail to plaintiff.
The summary judgment dismissing the complaint is affirmed.
NOTES
[1] We are aware that in Ross the Supreme Court held that Transport of New Jersey, which became the public entity New Jersey Transit by reason of the Public Transportation Act of 1979, codified as N.J.S.A. 27:25-1 to -24, had no obligation as a self-insurer to provide UM benefits. But that was because it held that public entity exempted by N.J.S.A. 39:6-54a from the Compulsory Insurance Law. The Court reasoned that if a public entity were exempt from compulsory insurance, it was not required either to purchase insurance or act as a self-insurer. In short, it had no compulsory insurance obligations at all. Ross, however, recognized Christy's continued viability, noting that there, as here, the municipality had assumed the role of self-insurer by having elected to establish a self-insurance fund under N.J.S.A. 40A:10-6. Beyond that, we are persuaded that local units, at least, must either purchase liability insurance or self-insure by reason of N.J.S.A. 40A:10-3. We further note that a 1987 amendment to N.J.S.A. 39:6-54a, L. 1987, c. 428, § 3, apparently excepts from the public entity exemption thereby afforded, insurance required by N.J.S.A. 39:6A-1 et seq. and N.J.S.A. 39:6B-1 et seq.