281 N.J. Super. 471 (1995)
658 A.2d 730
ANTHONY ARICO, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF BRICK, INDIVIDUALLY AND THROUGH THEIR ADMINISTRATORS, GALLAGHER BASSETT SERVICES AND INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1995.
Decided May 22, 1995.
*472 Before Judges MICHELS, STERN and KEEFE.
Edward F. Duschock argued the cause for appellant.
Guy P. Ryan argued the cause for respondent Township of Brick and Gallagher Bassett Services (Gilmore & Monahan, attorneys; Thomas E. Monahan, of counsel; Mr. Ryan, on the brief).
Lars S. Hyberg argued the cause for respondent International Surplus Lines Insurance Company (McAllister, Westmoreland, Vesper & Schwartz, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
The issue on appeal is whether an excess insurance policy purchased by a self-insured municipality, to pay all claims above a fixed amount arising out of accidents involving motor vehicles owned by the municipality, provides UIM primary coverage when the municipality has elected not to provide basic underinsured (UIM) benefits in connection with its motor vehicles.
Plaintiff Anthony Arico ("Plaintiff") appeals from a summary judgment order in favor of defendants Township of Brick, (Brick), Gallagher Bassett Services, (Gallagher), and International Surplus Lines Insurance Company, (Surplus). Plaintiff argues that the injuries he suffered as a result of an accident while employed as a *473 sanitation worker for Brick should be covered by Brick's excess insurance policy purchased from Surplus.
Plaintiff was injured as he rode on the back of a sanitation truck during the course of his employment for Brick. The truck was rear-ended by a vehicle driven by Brian McBride and owned by Lorraine Ratta. Plaintiff filed a complaint against McBride and Ratta and received $100,000 in settlement, the extent of Ratta's policy. Plaintiff also filed a workers' compensation claim petition, and received a $30,000 recovery by way of a N.J.S.A. 34:15-20 settlement.
As the claims between plaintiff and Ratta were being resolved, plaintiff sent a notice letter for UIM coverage to Brick's carrier. Plaintiff then filed a verified complaint against Brick, its insurance administrator Gallagher, and Surplus.
At the time of the accident, Brick was self-insured. However, Brick has not applied for a self insurance certificate from the State of New Jersey, N.J.S.A. 39:6-54(b), nor has it established a self insurance fund under N.J.S.A. 40A:10-6. Gallagher was retained as its claims and insurance administrator. Brick purchased an insurance policy from Surplus which contained the following pertinent provisions:
The Limits of Liability provided under this insurance shall be per the limits scheduled, but only excess of:
$50,000 ultimate net loss each claim, but not exceeding $50,000 ultimate net loss each occurrence, and, $175,000 annual aggregate ultimate net loss.
[(emphasis in original)]
Ultimate net loss is defined as the sum of:
a) the sum of the losses sustained by the insured after making deductions for all recoveries and all salvages[.]
b) the sum of the amounts the insured becomes obligated to pay ... for litigation, settlement, adjustment and investigation of claims in suit[.]
Agreement F of the policy is the cornerstone of this appeal:
AGREEMENT F  AUTOMOBILE LIABILITY The Company agrees, subject to limitations, terms and conditions hereunder mentioned in Section II, General Conditions or added hereto by Endorsement, to pay on behalf of the Insured all sums which the insured shall be legally obligated to pay or assumed by the Named Insured under contract or agreement, for damages direct or consequential, and *474 expenses, all as more fully defined by the term Ultimate Net Loss, because of Personal Injuries, . .., arising out of the ownership, maintenance or use of any automobile and occurring during the period of insurance, and shall include uninsured, underinsured motorists and Personal Injury Protection (PIP) coverage; and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such Personal Injury or Property Damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.
[(emphasis added)]
Brick, Gallagher and Surplus moved for summary judgment and plaintiff cross-moved for summary judgment. Judge James D. Clyne, P.J., held that Brick had no liability to plaintiff as a result of the accident, specifically but not limited to UIM claims, and Surplus likewise had no liability to plaintiff, specifically including but not limited to UIM claims, and dismissed the complaint with prejudice. This appeal followed.
In Downey v. City of Elizabeth, 273 N.J. Super. 335, 641 A.2d 1109 (App.Div. 1994), decided after summary judgment was entered in this case, we held that a municipal self-insurer is not required to provide optional UIM coverage for vehicles owned by the municipality. Id. at 339, 641 A.2d 1109. Plaintiff conceded this point at oral argument, and no longer contends that Brick had the responsibility to provide such coverage.
However, plaintiff contends that the Surplus policy may be read to provide primary UIM coverage in the absence of Brick's decision not to self-insure for such coverage. Plaintiff primarily relies upon the wording of Agreement F in which Surplus agrees to "pay on behalf of the insured ... damages ... arising out of the .... use of any automobile ..., and shall include ... underinsured ... coverage[.]" He maintains that Surplus' specific agreement to pay UIM benefits can only mean that Surplus agreed to provide primary coverage for UIM in the absence of Brick's decision not to self-insure for such benefits.
We reject plaintiff's argument because it ignores other salient provisions of Agreement F, and the structure of the policy on the whole. An excess policy provides protection to an insured *475 for liability for an amount above, or in excess of, the maximum coverage supplied by the primary policy. 8A Appleman, Insurance Law and Practice § 4909 (1981). Where, as here, a public entity elects not to purchase automobile liability insurance, as it is permitted to do by statute (N.J.S.A. 39:6-54), it may elect to place a ceiling on its personal exposure to claims by purchasing an excess insurance policy. In essence, the municipality becomes the primary insurer, and the excess insurer's obligation to pay does not accrue until some agreed upon condition precedent occurs. That is what occurred in this case. Brick purchased an excess liability policy from Surplus.
Contrary to plaintiff's argument, the policy is not ambiguous. Surplus is not required to pay anything under the policy until Brick has paid $50,000 on any one claim, or $175,000 in the aggregate for one year. More importantly, under Agreement F, Brick's qualifying payment must be made because it is "legally obligated" to do so, or because it has assumed the obligation to do so "under contract or agreement[.]" In this case, Brick has paid nothing to plaintiff in recognition of his UIM claim. Beyond that, however, is the fact that Brick is not "legally obligated" to do so under the Downey opinion, nor has Brick voluntarily assumed the obligation to do so under "contract" with any municipal employee union. Thus, the conditions precedent for Surplus' obligation to pay simply have not been met under the clear wording of the policy. The mere mention of UIM coverage in the excess policy does not automatically convert the excess policy into a primary policy without more. See Stiefel v. Bayly, Martin and Fay, 242 N.J. Super. 643, 577 A.2d 1303 (App.Div. 1990). Thus, Judge Clyne properly concluded that Surplus had no obligation to plaintiff.
All other issues raised by plaintiff in his brief are without merit, are not of precedential value, and do not warrant further discussion. R. 2:11-3(e)(1)(E).
Affirmed.